UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

THE HIGHLAND CONSULTING
GROUP, INC.,

      Plaintiff,

vs.

JESUS FELIX MINJARES SOULE,

      Defendant.
_____/

## **VERIFIED COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED HEARING, AND PRELIMINARY INJUNCTION**

Plaintiff, The Highland Consulting Group, Inc. ("Highland"), files this Verified Complaint and Emergency Application for Temporary Restraining Order, Expedited Hearing, and Preliminary Injunction against Defendant Jesus Felix Minjares Soule ("Minjares") and states as follows:

1. Highland makes this application on an emergency basis for a temporary restraining order because Minjares is utilizing Highland's confidential and trade secret information to solicit Highland's clients and contractors, in violation of a clear non-disclosure and non-solicitation agreement. Highland recently discovered that Minjares used Highland's confidential information to take a Highland client generating hundreds of thousands of dollars in revenue per month.

2. Highland hired Minjares on or about November 11, 2011, as an Economic Analyst and thereafter provided him with access to its confidential information, trade secrets, and customers. In connection with his employment and in order to protect

1

Highland's confidential information and customer goodwill, Minjares signed a Non-Disclosure, Non Solicitation and Compliance Agreement (the "Agreement") in which he specifically agreed (1) to return all Highland information and documents upon separation from the company; (2) not to improperly use or disclose Highland's confidential information; (3) not to solicit, for a period of one year after his employment with Highland ended, Highland customers or contractors with which he performed services for during his employment with Highland; and (4) not to render professional consulting services for Highland customers with which he performed services for during his employment with Highland.

3. Highland sponsored Minjares' H-1B Visa and his successful application for a permanent resident card (Green Card).

4. Highland also provided Minjares with training to further develop his skill set, including work training as well as English classes.

5. On September 26, 2019, Minjares notified Highland of his intention to resign from his employment, effective September 25, 2019.

6. Highland recently learned that Minjares went to work for a competitor of Highland, Surge Performance Group ("SPG"), an entity formed on September 25, 2019 by Highland's former president of global mining operations and the man whom Minjares reported to at Highland.

7. Despite Minjares' legal obligations to Highland, Minjares refused to return Highland's confidential information.

8. The confidential and trade secret information Minjares stole from Highland included information regarding an ongoing job Minjares was doing for a Highland customer.

9. On December 4, 2019, Highland received an email containing an invoice in the amount of $153,120.00 for consulting services that Minjares was performing for a former Highland customer.

10. As a result of Minjares' action, Highland lost at least one large customer. In addition, all of the contractors working on the former Highland customer's project appear to now be working for the same customer but through SPG.

11. An injunction is necessary to prevent Minjares' actual misappropriation of Highland's trade secret and confidential information and continued breach of the non-disclosure and customer non-solicitation covenants in his Agreement.

12. Specifically, per the terms of Minjares' Agreement and his common law obligations owed to Highland, Highland seeks the following injunctive relief which it believes is the minimum relief it must have to protect it from Minjares' conduct, as described above:

   a. That Minjares immediately cease the disclosure and/or use of any Highland trade secret and confidential information, including but not limited to all customer information;

   b. That Minjares return all of Highland's Confidential Information, whether in hard copy or electronic media, to Highland immediately;

   c. That Minjares preserve for inspection and production any and all cell phones, computers, and other electronic storage devices (including, but

    not limited to, iPads, tablets, hard drives, USB devices, thumb drives, flash drives, and external hard drives) which are in his possession, custody, or control;

d. That Minjares preserve for inspection and production all data maintained on all personal e-mail accounts and cloud storage accounts which Minjares has used at any time since March 1, 2019;

e. That Minjares disclose to Highland the names and identities of all persons and/or entities to whom he has provided Highland's Confidential Information or for whose benefit Minjares has used Highland's Confidential Information, including all individuals who accessed the cloud storage account with Highland's information;

f. That Minjares is prevented for the duration of the Order from either directly or indirectly, on Minjares's behalf or in the service or on behalf of others, whether acting alone or in concert with others, soliciting or communicating (regardless of who initiates the communication) with any customer of Highland with whom Minjares was involved in business-related contact or dealings during Minjares's employment with Highland; and

g. That Minjares is prevented for the duration of the Order from either directly or indirectly, on Minjares's behalf or in the service or on behalf of others, whether acting alone or in concert with others, performing services for any customer of Highland with whom Minjares was involved

in business-related contact or dealings during Minjares's employment with Highland.

13. Time is of the essence because Minjares has Highland's trade secret and confidential information in his possession and has already stolen business from Highland in violation of his Agreement. Accordingly, Highland has already suffered, and without a temporary restraining order and preliminary injunction will continue to suffer, substantial irreparable harm to its business as a result of Minjares's actions.

14. Highland also seeks actual damages based on Minjares's conduct as described above and herein, attorneys' fees, and costs which it is entitled to recover from Minjares.

## **PARTIES, JURISDICTION, AND VENUE**

15. Highland is a Delaware limited liability company with its principal place of business in St. Michaels, Maryland.

16. Minjares is an individual who resides at 7460 NW 98th Ct., Doral, FL 33178-3449 Florida and may be served at this address, or wherever he may be found.

17. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1331 because it involves claims that arise under federal law. Additionally, this Court has supplemental jurisdiction over Highland's state law claims under 28 U.S.C. § 1367.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Minjares resides in the Southern District of Florida, and pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in the Southern District of Florida.

**FACTUAL BACKGROUND**

19. The Highland Group is a global business consulting firm that was founded in 1991.

20. On November 14, 2011, Highland hired Minjares as an Economic Analyst.

21. Minjares is a Mexican national.

22. Highland sponsored and paid for Minjares' H-1B Nonresident Visa, which was approved on or about November 30, 2011 to run through November 14, 2014.

23. On June 11, 2012, Minjares received a pay raise and promotion. In conjunction with the promotion, Minjares executed the Agreement. A copy of the Agreement is attached as **Exhibit 1**.

24. The Agreement contains the following provisions:

   a. Minjares will not during the time of employment by Highland nor at any time thereafter, directly or indirectly, disclose to others and/or use for Minjares's own benefit or for the benefit of others, confidential information;

   b. Upon termination of employment with Highland, Minjares will return to Highland or to Highland's clients all materials and information;

   c. During the period of employment and for twelve (12) months following the termination for any reason of Minjares' employment, solicit or sell, for Minjares' own account or for others, professional consulting services that are competitive with the services of Highland, to any company for which Minjares has solicited or has performed any professional consulting services on behalf of Highland during any part of the twelve months immediately preceding the termination of Minjares' employment;

    d. During the period of employment and for twelve (12) months following the termination for any reason, work or render professional consulting services, for Minjares' own account or for others, for any client of Highland for which Employee has performed any services during any part of the year immediately preceding the termination;

    e. During the period of employment and for twelve (12) months following the termination of the Minjares' employment, either directly or indirectly, hire any employee or subcontractor of Highland in any capacity whatsoever, for Minjares' own account or on behalf of any person or corporation other than Highland, or attempt to induce any employee of Highland to leave the employ of Highland to work for Minjares or any other person, firm or corporation.

25. On June 2, 2014, Highland petitioned for the extension of Minjares' H-1B Visa, which was approved through June 23, 2017.

26. Highland invested thousands of dollars in Minjares to provide him with extensive training, including proprietary Highland Training as well as English lessons.

27. Minjares worked his way up at Highland to the position of Senior Vice President.

28. Highland supported and paid for Minjares' I-485 application for permanent residency.

29. When not working on location for a Highland client, Minjares performed his job responsibilities in the Southern District of Florida.

30. On October 26, 2016, Minjares received permanent residency status (green card) in the United States.

31. While at Highland, Minjares worked with Highland's clients in Mexico and elsewhere.

32. On or about March 6, 2019, Minjares began working for Highland's client Fresnillo, a Mexican-based precious metals mining company, on a consulting project.

33. On September 10, 2019, Minjares sent an email to Fresnillo executives regarding upcoming executive meetings that were scheduled to take place on September 13, 2019 and September 16, 2019.

34. Minjares sent an email to Fresnillo personnel requesting a meeting on September 19, 2019.

35. On September 20, 2019, Highland's president of global mining operations announced his resignation.

36. As of September 20, 2019, Highland was negotiating with Minjares to promote Minjares to the position of President of The Highland Group Mexico.

37. The negotiations regarding Minjares' promotion continued through September 25, 2019.

38. On September 25, 2019, Fresnillo sent Minjares an email stating it was cancelling an ongoing consulting project immediately. A copy of the email is attached as **Exhibit 2**.

39. Minjares was the only Highland representative on the Fresnillo termination email.

40. Minjares claimed that Fresnillo would not take his calls regarding the termination of the account.

41. Minjares claimed that he also sent an email inquiry to Fresnillo requesting an explanation for the termination; however, Minjares did not provide Highland with a copy of the email and Highland has been unable to locate the email.

42. Minjares ordered that Highland immediately remove its on-site consultants at the Fresnillo project.

43. On September 26, 2019, Minjares tendered his resignation to Highland effective September 25, 2019. A copy of the resignation is attached as **Exhibit 3**.

44. On September 26, 2019, Minjares and Highland spoke about Minjares continuing as a subcontractor for Highland.

45. Highland used a cloud-based storage account for the Fresnillo project ("Highland Cloud").

46. Minjares was an administrator for the Highland Cloud.

47. On September 30, 2019, access to the Highland Cloud for Highland's contractor Sergio Aceves was changed from a Highland email account to an email account belonging to SPG, which indicates that Sergio Aceves was now working for SPG on the Fresnillo project.

48. Another Highland consultant had his access to the Highland Cloud removed after Minjares' resignation.

49. On October 3, 2019, Minjares sent an email to Highland claiming that he was working with his father and brother, who own a domain name selling electronics. A copy of the email is attached as **Exhibit 4**.

50. On October 11, 2019, Minjares sent an email containing the SPG logo.

51. SPG was formed by Highland's former president of global mining operations on September 25, 2019, the same day that Fresnillo cancelled its contract with Highland and the effective date of Minjares' resignation.

52. In October of 2019, Minjares communicated with Fresnillo on behalf of SPG.

53. On October 16, 2019, Fresnillo sent an email stating it would be meeting with Minjares. Despite Minjares' resignation, the email references Minjares as an employee of Highland and copies his Highland email address. A copy of the email is attached as **Exhibit 5**.

54. SPG provided a project payment schedule to Fresnillo. A copy of the project payment schedule is attached as **Exhibit 6.**

55. Upon information and belief, SPG's project payment schedule attached as Exhibit 5 is the same project that Highland was working on up to September 25, 2019.

56. Upon information and belief, Minjares traveled to Mexico between October 31, 2019 and November 1, 2019 for a meeting regarding the Fresnillo project.

57. On December 4, 2019, Highland received a copy of an invoice to Fresnillo for consulting services ("December Invoice") in the amount of $153,120.00. A copy of the invoice is attached as **Exhibit 7.**

58. The December Invoice contains Minjares' email using SPG's domain name. *See* **Ex 7.**

59. The December Invoice included SPG's logo and a logo for Minjares Soule Consultores De Negocios S.C. *See* **Ex 7.**

60. Upon information and belief, Minjares Soule Consultores De Negocios S.C. is an entity owned and/or controlled by Minjares.

61. Minjares' actions in removing access to the Highland Cloud containing Highland data for a former Highland client, failing to return Highland's confidential information, performing work for a former Highland's client on behalf of one of Highland's direct competitors, and soliciting business from Highland's former client are all violations of the Agreement.

62. All conditions precedent have been met or have been waived.

## COUNT I VIOLATION OF THE FEDERAL TRADE SECRET ACT

63. Highland repeats and re-alleges the allegations contained in the preceding paragraphs 1 through 62 above.

64. Highland's trade secrets have economic value because they are not generally known to, and not readily ascertainable by proper means by, the public or others, including Highland's competitors, which could profit by using or disclosing them.

65. Highland made efforts that were reasonable under the circumstances to maintain the secrecy of its trade secrets.

66. Minjares has improperly acquired and retained Highland's trade secrets.

67. Minjares has used or disclosed Highland's trade secrets without the consent of Highland.

68. Due to Minjares's actual and threatened misappropriation of Highland's trade secrets, Highland has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law in the absence of injunctive relief, including, but not limited to, the loss of customer goodwill and loss of the value of Highland's trade secrets.

Additionally, Highland has suffered and will continue to suffer damages in the form of lost business.

69. Highland's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

70. The foregoing establishes a violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1831, et seq.

71. Additionally, alternatively and without waiving the foregoing, Highland also seeks from Minjares its actual damages, plus court costs and reasonable attorneys' fees.

   **WHEREFORE**, Highland respectfully requests that this Court:

(i)   enter a permanent injunction prohibiting Minjares from using Highland's trade secret information;

(ii)  in the alternative to an injunction, Highland requests this Court award damages for Minjares use of Highland's trade secret information;

(iii) award Highland entitlement to attorney's fees and costs for bringing this action; and

(iv)  grant Highland such further relief as this Court may deem appropriate.

## COUNT II BREACH OF CONTRACT
## (INJUNCTION TO PREVENT ACCESS AND RETURN INFORMATION)

72. Highland repeats and realleges the allegations contained in the preceding paragraphs 1 through 62 above.

73. Minjares signed and agreed to comply with the terms of the Agreement.

74. As part of the Agreement, Minjares agreed that he would not disclose to others and/or use for Minjares's own benefit or for the benefit of others, confidential information.

75. As part of the Agreement, Minjares also agreed that he would return to Highland or to Highland's clients all materials and information.

76. Highland performed under the Agreement, including, but not limited to, by entrusting Minjares with its Confidential Information and customer relationships during his employment with Highland.

77. Minjares has breached his Agreement by using, for the benefit of himself and/or SPG, and disclosing to SPG, Highland's Confidential Information, including the information regarding the Fresnillo project.

78. Minjares also breached the agreement by providing access to the Highland Cloud to a contractor no longer associated with Highland.

79. As a result of Minjares's breach of his Agreement, Highland has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law in the absence of injunctive relief, including, but not limited to, the loss of customer goodwill and loss of the value of Highland's Confidential Information. Additionally, Highland has suffered and will continue to suffer damages in the form of lost business.

80. Additionally, as a result of Minjares's breach of his Agreement, Highland has incurred attorney's fees and costs in connection with the investigation into Minjares's breach and the filing of this lawsuit. Highland is entitled to recover its attorney's fees and costs under the Agreement and applicable law.

**WHEREFORE**, Highland respectfully requests that this Court:

(i) enter a permanent injunction prohibiting Minjares from using Highland's Confidential Information;

(ii) enter a permanent injunction requiring Minjares to return Highland's Confidential Information;

(iii) award Highland entitlement to attorney's fees and costs for bringing this action; and

(iv) grant Highland such further relief as this Court may deem appropriate.

## COUNT III BREACH OF CONTRACT
## (DAMAGES)

81. Highland repeats and realleges the allegations contained in the preceding paragraphs 1 through 62 above.

82. Minjares signed and agreed to comply with the terms of the Agreement.

83. As part of the Agreement, Minjares agreed that he would not solicit or sell, for Minjares's own account or for others, professional consulting services that are competitive with the services of Highland, to any company for which Minjares has solicited or has performed any professional consulting services on behalf of Highland during any part of the twelve months immediately preceding the termination of Minjares's employment.

84. Minjares also agreed that for twelve (12) months following the termination for any reason, work or render professional consulting services, for Minjares' own account or for others, for any client of Highland for which Minjares has performed any services during any part of the year immediately preceding the termination.

85. Highland performed under the Agreement, including, but not limited to, by entrusting Minjares with its Confidential Information and customer relationships during his employment with Highland.

86. Minjares has breached his Agreement by providing consulting services to Fresnillo.  *See* **Ex. 3**.

87. As a result of Minjares's breach of his Agreement, Highland has suffered damages.

88. Additionally, as a result of Minjares's breach of his Agreement, Highland has incurred attorney's fees and costs in connection with the investigation into Minjares's breach and the filing of this lawsuit. Highland is entitled to recover its attorney's fees and costs under the Agreement and applicable law.

**WHEREFORE**, Highland respectfully requests that this Court:

(i) enter an Order, awarding Highland monetary damages in an amount to be determined at trial;

(ii) award Highland entitlement to attorney's fees and costs for bringing this action; and

(iii) grant Highland such further relief as this Court may deem appropriate.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

89. Highland repeats and re-alleges the allegations contained in the preceding paragraphs 1 through 62 above.

90. Highland is entitled to a temporary restraining order and a preliminary injunction because it has suffered and will continue to suffer imminent harm and irreparable injury as a result of the wrongful acts and omissions of Minjares, described above. The injury to Highland described herein is not accurately measurable and Highland cannot be adequately compensated in damages.

91. Minjares refuses to return Highland's confidential information.

92. As outlined above, Minjares specifically provided access to the Highland Cloud to a contractor who is no longer associated with Highland so that the contractor and Minjares could work on the Fresnillo project for a competitor of Highland.

93. Minjares is currently working for a competitor doing the same work for Fresnillo that he performed for Highland only a few months earlier. *See* **Ex 7**.

94. There is no adequate remedy at law for the harm to Highland described herein. The facts and events pled herein demonstrate a clear likelihood that Highland will prevail on the merits of its case.

95. Due to the severity of the conduct described herein, the injury faced by Highland outweighs any injury that would be sustained by Minjares as a result of the injunctive relief requested.

96. The granting of injunctive relief would not adversely affect public policy or public interest. Highland will suffer immediate and irreparable injury, loss, or damage if an immediate temporary restraining order is not granted before Minjares can be heard and notice should not be required because there are no less drastic means to protect Highland's interests. Highland's request for a temporary restraining order is limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing.

97. Minjares has possession of, has likely used, and is in a position to use, Highland's trade secrets in direct competition with Highland.

98. Additionally, Minjares, individually and on behalf of SPG, has already been involved in soliciting, either directly or indirectly, Highland's customers, including Fresnillo, in violation of the non-solicitation covenant in Minjares's Agreement.

99. Minjares's disclosure and use of Highland's trade secrets and illegal solicitation of Highland's customers will cause Highland to suffer irreparable harm, including the loss of the value of its confidential and trade secret information, and the loss of the value of its customer goodwill and its competitive place in the market, for which it has no adequate remedy at law.

100. In less than three months, Minjares has orchestrated a scheme that allowed him to transfer Highland's client Fresnillo, who was generating hundreds of thousands of dollars in revenue per month for Highland, to SPG so that Minjares could personally benefit.

101. Each day that Minjares continues his acts and omissions brings additional irreparable harm and damage to Highland. Therefore, Highland will suffer irreparable harm and damage for which Highland has no adequate remedy at law unless this Court intervenes and enters a temporary restraining order and, pending a trial on the merits, a preliminary injunction ordering the relief requested below.

102. Additionally, as detailed above, in the Agreement, Minjares contractually agreed that Highland is entitled to an injunction.

WHEREFORE, Highland respectfully requests that this Court enter a temporary restraining order and, pending trial on the merits, a preliminary injunction ordering:

a. That Minjares immediately cease the disclosure and/or use of any Highland trade secret and confidential information, including but not limited to all customer information;

b. That Minjares return all of Highland's Confidential Information, whether in hard copy or electronic media, to Highland immediately, including all information on the Highland Cloud;

c. That Minjares preserve for inspection and production any and all cell phones, computers, and other electronic storage devices (including, but not limited to, iPads, tablets, hard drives, USB devices, thumb drives, flash drives, and external hard drives) which are in his possession, custody, or control;

d. That Minjares preserve for inspection and production all data maintained on all personal e-mail accounts and cloud storage accounts which Minjares has used at any time since March 1, 2019;

e. That Minjares disclose to Highland the names and identities of all persons and/or entities to whom he has provided Highland's Confidential Information or for whose benefit Minjares has used Highland's Confidential Information, including all individuals who accessed the Highland Cloud;

f. That Minjares is prevented for the duration of the Order from either directly or indirectly, on Minjares's behalf or in the service or on behalf of others, whether acting alone or in concert with others, soliciting or communicating (regardless of who initiates the communication) with any customer of Highland with whom Minjares was involved in business-related contact or dealings during Minjares's employment with Highland; and

g. That Minjares is prevented for the duration of the Order from either directly or indirectly, on Minjares's behalf or in the service or on behalf of others, whether acting alone or in concert with others, performing services for any customer of Highland with whom Minjares was involved in business-related contact or dealings during Minjares's employment with Highland.

**EMERGENCY CERTIFICATION**

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

By: /s/ **Gregory W. Coleman**
**Gregory W. Coleman**
Florida Bar No: 846831

Dated December 9, 2019

Respectfully submitted,

By: /s **Gregory W. Coleman**
**Gregory W. Coleman**
Florida Bar No: 846831
**J. CHRIS BRISTOW**
Florida Bar No. 068304
**CRITTON, LUTTIER & COLEMAN LLP**
303 Banyan Blvd
Suite 400
West Palm Beach, FL 33401
Telephone: 561-842-2820
Facsimile: 561-253-0164
Attorneys for the Defendants
gcoleman@lawclc.com
JCBristow@lawclc.com
cwoodward@lawclc.com

**VERIFICATION**

    I, Brian Saville, the CFO of Highland, have reviewed the foregoing Verified Complaint and Emergency Application for Temporary Restraining Order, Expedited Hearing, and Preliminary Injunction, and all factual allegations contained therein.  On the basis of personal knowledge of the facts alleged, gained as a result of my personal knowledge regarding the transactions and matters referred to in the Verified Complaint, I verify as true and correct to my best knowledge and belief the factual allegations in the Verified Complaint (with exception to those alleged on information and belief).

_____
Brian Saville