THE HIGHLAND CONSULTING
GROUP, INC.,

    Plaintiff,

v.

JESUS FELIX MINJARES SOULE,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

This cause comes before the Court on Plaintiff's Motion for a Preliminary Injunction. DE 13. The Court has carefully reviewed Plaintiff's Motion, Defendant's Response [DE 40], and Plaintiff's Reply [DE 43]. The Court held an evidentiary hearing on the Motion on February 19, 2020. In addition, the Court has had the benefit of both pre-hearing and post-hearing proposed orders from each party. The Court is fully advised in the premises. For the reasons set forth below, Plaintiff's Motion for a Preliminary Injunction is **GRANTED IN PART AND DENIED IN PART**.

## I. INTRODUCTION

This is an action for violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and for breach of a Non-Disclosure, Non-Solicitation and Compliance Agreement ("Agreement"). In the Motion presently before the Court, Plaintiff The Highland Consulting Group, Inc. seeks a preliminary injunction prohibiting a former employee, Defendant Jesus Felix Minjares Soule, from engaging in what Plaintiff contends would be further violations

of the DTSA and further breaches of the Agreement.[1]  Plaintiff has shown that it is entitled to a preliminary injunction enforcing paragraphs 1.C and 2.B of the Agreement and has not shown that it is entitled to a preliminary injunction related to the DTSA or to any other paragraph of the Agreement.

## II.  FINDINGS OF FACT

The Court finds that the following facts have been established by a preponderance of the evidence:

James Kerridge founded The Highland Group, a global consulting firm, in 1990 or 1991. T. 7-10.  The Highland Group now consists of several corporations and entities, including both Plaintiff and HCG Advisors Mexico:



D. Exh. 10; *see also* T. 80, 120.

---

[1] Plaintiff's Motion also sought a temporary restraining order, which the Court previously denied.  DE 13; DE 15.

Defendant began working for Plaintiff as an economic analyst in 2011. DE 1 ¶ 20; DE 25 ¶ 20. He later would become Senior Vice President of Operations. DE 1 ¶ 27; DE 25 ¶ 27; T. 86. Defendant worked in Plaintiff's mining sector under Gregory Peacock. T. 14, 86. Mr. Peacock had access to the same information from Plaintiff as did Defendant. *Id.* 194-95. Mr. Peacock was subject to a one-year nondisclosure, noncompete, and non-solicitation agreement around 2010, but he has not had such an agreement since that time. *Id.* 194-95.

Plaintiff agreed to pay Defendant his salary and to reimburse him for expenses on a bi-weekly basis. P. Exh. 34; D. Exh. 3. Salary and expense reimbursements were untimely on occasion when Plaintiff experienced cash-flow issues. T. 33, 45, 136, 188. Defendant has received all of the salary payments and expense reimbursements due to him. *Id.* 89-90, 136. Defendant signed the Agreement as part of his employment. P. Exh. 34; D. Exh. 7; T. 135. Beginning in May 2014, Defendant was eligible to participate in what Plaintiff called a "Discretionary Project Bonus program." D. Exh. 3.

Minera Saucito, S.A. de C.V. ("Saucito") is a large silver mine in Mexico. T. 79. In 2019, HCG Advisors Mexico signed a nearly $3 million contract with Saucito to provide consulting services. D. Exh. 11; T. 80. Saucito's contract was with HCG Advisors Mexico for purposes of Mexican tax and regulatory requirements. T. 80-81. Defendant began providing consulting services to Saucito around March 2019. DE 25 ¶ 32; T. 86-87, 136-37.

Mr. Peacock resigned from his employment on September 20, 2019. T. 203. He founded Surge Performance Group ("SPG"), which is also a consulting firm, on or around September 25. P. Exh. 54; T. 184.

Saucito terminated its contract with HCG Advisors Mexico on September 25, effective immediately. P. Exh. 29; T. 87. SPG began working on a project for Saucito in October 2019. T. 215.

Defendant resigned from employment effective September 25. DE 1 ¶ 43; DE 25 ¶ 43; P. Exh. 63; T. 86. After he resigned, Plaintiff sent him a termination letter that, among other things, sought the return of all company property in his possession within one week. P. Exh. 37; T. 154. Defendant did not respond to that letter. T. 155. He began to work for SPG, where he provided consulting services for the SPG-Saucito project. *Id.* 145, 172, 193.

Plaintiff filed this lawsuit against Defendant for violation of the DTSA and for breach of the Agreement. DE 1. Defendant filed a counterclaim for breach of his employment agreement. DE 25. As part of the preliminary discovery in this lawsuit, Defendant turned over to Plaintiff's counsel several flash drives containing Plaintiff's data. T. 90-91, 151, 168-69, 182-83.

### III. CONCLUSIONS OF LAW

Based on the findings of fact set forth above, the Court makes the following conclusions of law:

**A.    Preliminary Injunction Standard**

A court may grant a preliminary injunction when the moving party shows that:

> (1) it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried: (2) irreparable injury during the pendency of the suit will be suffered unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly

established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation marks omitted).

**B.     Likelihood of Success on the Merits**

**1.     Plaintiff's DTSA Claim**

As a preliminary matter, the Court ordered the parties to submit proposed Findings of Fact and Conclusions of Law containing precise citations to the record that support their arguments. T. 4, 220-21. Plaintiff's proposed order does not contain any analysis of its DTSA claim. *See* DE 59. Rather, Plaintiff proposes that the Court refrain from addressing the DTSA claim because Plaintiff demonstrated a substantial likelihood of success on the merits of its breach-of-contract claim. *Id.* at 12. The Court nevertheless addresses why Plaintiff did not demonstrate a substantial likelihood of success on the merits of the DTSA claim.

An owner of a trade secret that is related to a product or service used in interstate or foreign commerce and that is misappropriated may bring a civil action and seek an injunction. 18 U.S.C. § 1836(b)(1), (3)(A). A "trade secret" is any "financial, business, scientific, technical, economic, or engineering information" that the owner has taken reasonable measures to keep secret and that derives independent economic value from not being generally known to, or readily ascertainable through proper means by, another person. *Id.* § 1839(3).

Plaintiff did not demonstrate a substantial likelihood of success on the merits of the DTSA claim because Plaintiff did not specifically identify any information that meets the definition of a trade secret. Plaintiff pointed to slides of a SPG presentation dated November 2019, comparing it to slides of a presentation of Plaintiff dated March 2019. *See* P. Exh. 22; P. Exh. 24. Mr. Kerridge testified that the presentations were almost the same and appeared to be virtually identical.

5

T. 23-26. However, Plaintiff did not produce evidence that any specific piece of information in the many slides of the presentations is unique to Plaintiff, as opposed to being commonly known and used within the mining and metals or consulting industries. Plaintiff similarly failed to carry this burden with respect to any other material, such as its One Highland presentation. *See* D. Exh. 2; T. 99-101.

Further, Plaintiff did not show that it took reasonable measures to keep information confidential. The information prepared for a client project, such as that contained within the March and November 2019 presentations, is the client's property. *See* D. Exh. 13; T. 54-55, 124, 180-81. Moreover, the Plaintiff did not require all employees who had access to such information to sign nondisclosure agreements. Mr. Peacock, for example, had access to the same information as did Defendant and was not subject to a nondisclosure agreement. For these reasons, Plaintiff is not entitled to a preliminary injunction related to its DTSA claim.

### 2. Plaintiff's Breach-of-Contract Claim

Plaintiff contends that Defendant breached the Agreement by (1) using Plaintiff's confidential information for his own benefit, (2) disclosing and/or distributing Plaintiff's information to others, (3) failing to return Plaintiff's information upon the termination of his employment, (4) soliciting companies to which he solicited or provided professional consulting services during the final year of his employment, and (5) rendering professional consulting services to clients of Plaintiff to whom he rendered services during the final year of his employment. *See* DE 1; DE 13. The parties agree that Maryland law governs the Court's construction of the Agreement. DE 13 at 12; DE 40 at 13; *see* D. Exh. 7. The Court addresses the relevant paragraphs of the Agreement in turn.

6

Plaintiff first contends that Defendant breached paragraphs 1.A and 1.B of the Agreement, which provide:

> A) Employee will neither copy nor distribute any material, or other information which comes into Employee's possession as a result of employment by Highland, other than for approved Highland use;
>
> B) Employee will not during the time of employment by Highland nor at any time thereafter, directly or indirectly, disclose to others and/or use for Employee's own benefit or for the benefit of others, confidential information including, but not limited to, trade secrets, customer lists, employee and prospective employee information, proprietary software products, financial statements, or other financial information pertaining to the business of Highland or to any of its clients, acquired by Employee during the period of employment, except to the extent as may be necessary in the period of employment or except to the extent as may be necessary in the ordinary course of performing duties as an Employee of Highland;

Plaintiff did not demonstrate a substantial likelihood of success on the merits in its assertion that Defendant breached these paragraphs by using, disclosing, or distributing Plaintiff's material or information. Plaintiff did not show that Defendant himself used, disclosed, or distributed any of Plaintiff's material or information. To the extent that SPG has used, disclosed, or distributed Plaintiff's information, Plaintiff did not show that Defendant, as opposed to another individual associated with SPG such as Mr. Peacock, used, disclosed, or distributed that information. While Defendant continues to work in the mining and metals consulting industry, it is not clear that he is using any information from Plaintiff, as opposed to relying on information from clients or on his general experience in and knowledge of the industry.

Plaintiff next maintains that Defendant breached paragraph 1.C of the Agreement, which provides:

> C) Upon termination of employment with Highland, Employee will return to Highland or to Highland's clients all materials and information, and any copies thereof and certify to Highland that Employee no longer has any rights to such materials or information, and agrees that the original and all copies of such materials and information have been returned to Highland or to Highland's client and that Employee will not develop competing professional consulting services based upon the materials and information obtained while employed by Highland; and

Defendant asserts that he returned all of Plaintiff's data as part of the preliminary discovery. Thus, he contends that Plaintiff did not show that he breached paragraph 1.C.

This paragraph does not include a deadline to return information, instead making its return due "[u]pon termination of employment." Maryland uses the "objective theory of contract interpretation," whereby a court construing a contract determines "from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Dennis v. Fire & Police Emp'rs' Ret. Sys.*, 390 A.2d 737, 747 (Md. 2006) (quotation omitted) (stating that the test is not what the parties to the contract intended it to mean, but what a reasonable person in the parties' position would have thought it meant); *see also Walton v. Mariner Health of Md., Inc.*, 894 A.2d 584, 594 (Md. 2006). No reasonable person would construe paragraph 1.C as being satisfied when Plaintiff's information is returned only upon discovery after a lawsuit is filed for breach of the paragraph. Plaintiff demonstrated a substantial likelihood of success in its contention that Defendant breached paragraph 1.C by failing to return Plaintiff's information upon termination of his employment.

Plaintiff argues that Defendant breached paragraph 2.A of the Agreement, which provides:

8

> A) During the period of employment and for twelve (12) months following the termination for any reason of the Employee's employment, solicit or sell, for Employee's own account or for others, professional consulting services that are competitive with the services of Highland, to any company for which the Employee has solicited or has performed any professional consulting services on behalf of Highland during any part of the twelve months immediately preceding the termination of Employee's employment;

Plaintiff did not show a substantial likelihood of success on the merits in its assertion that Defendant breached paragraph 2.A. Defendant answered, in response to interrogatories, that he has had "contact" with four companies since the termination of his employment, but that "contact" does not necessarily equate to solicitation or the selling of professional consulting services. *See* P. Exh. 26. To the extent that any companies that formerly were clients of Plaintiff are now clients of SPG, Plaintiff did not show that Defendant, as opposed to another individual associated with SPG such as Mr. Peacock, solicited those companies. Mr. Peacock testified that he alone solicits clients for SPG. T. 194.

Because Plaintiff did not show a substantial likelihood of success in its assertion that Defendant breached paragraph 2.A, the Court need not reach Defendant's argument that the paragraph is unenforceable because it is overly broad. Even if the paragraph were overly broad, its breadth would not invalidate the remainder of the Agreement because the Court could excise the unenforceable paragraph. *See Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 439 (4th Cir. 2004) ("If a restrictive covenant is unnecessarily broad, a court may blue pencil or excise language to reduce the covenant's reach to reasonable limits. . . . A court can only blue pencil a restrictive covenant if the offending provision is neatly severable."); *Aerotek, Inc. v. Obercian*, 377 F. Supp. 3d 539, 548 (D. Md. 2019) ("If two provisions of a noncompete are distinct, divisible promises, a court may excise the offending provision.").

Finally, Plaintiff asserts that Defendant breached paragraph 2.B of the Agreement, which provides:

> B) During the period of employment and for twelve (12) months following the termination for any reason, work or render professional consulting services, for Employee's own account or for others, for any client of Highland for which Employee has performed any services during any part of the year immediately preceding the termination;

Plaintiff demonstrated a substantial likelihood of success on the merits in its contention that Defendant breached paragraph 2.B. Defendant provided consulting services to Saucito during the final year of his employment with Plaintiff. He has provided consulting services for Saucito since the termination of his employment.

Defendant contends that Plaintiff did not show that Saucito was Plaintiff's client. Defendant asserts that Saucito was actually a client of HCG Advisors Mexico, the entity with whom Saucito had a contract. The Agreement defines the term "Highland" as "The Highland Group or any of it's affiliates." D. Exh. 7. "The Highland Group" consists of several corporations and entities, including both Plaintiff and HCG Advisors Mexico. Plaintiff and HCG Advisors Mexico are affiliated entities that fall within "The Highland Group." While Saucito's contract was with HCG Advisors Mexico, Plaintiff's employees, including Defendant, provided services to Saucito. This fact bolsters a conclusion that Plaintiff and HCG Advisors Mexico are affiliated entities. By prohibiting Defendant from rendering professional consulting services to clients of The Highland Group or any of its affiliates, the Agreement bars Defendant from rendering services to clients of both Plaintiff and HCG Advisors Mexico. Plaintiff demonstrated a substantial likelihood of success in its contention that Defendant breached paragraph 2.B by rendering

professional consulting services to Saucito within the 12 months following the termination of his employment.[2]

Defendant argues that paragraph 2.B is unenforceable because it is overly broad in that it prevents him from rendering *any* professional consulting services to clients to whom he rendered services for Plaintiff. *See* D. Exh. 7. Defendant maintains that this paragraph is broader than necessary to protect Plaintiff's interests because it is not limited to the type of services that he rendered while he was Plaintiff's employee, that is, consulting services in the mining and metals industry.

An employer seeking to enforce a non-compete agreement must show, among other things, that the agreement is no wider in scope and duration than is reasonably necessary to protect the employer's interests. *CytImmune Scis., Inc. v. Paciotti*, No. 16-1010, 2016 WL 3218726, *2 (D. Md. June 10, 2016). Paragraph 2.B is limited to barring Defendant from rendering professional consulting services to the same clients to whom he rendered services for Plaintiff during the final year of his employment, limited in duration to one year following the termination of his employment. This paragraph is not overly broad under Maryland law. *See Deutsche Post*, 116 F. App'x at 438 (citing Maryland law as standing for the proposition that "[e]mployers have a legally protected interest in preventing departing employees from taking with them the customer goodwill they helped create for the employer"); *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990) ("Persons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers.").

---

[2] The Court concludes that Defendant breached paragraph 2.B with respect to at least one client, Saucito. The Court need not identify all of the clients to whom Defendant has rendered services in breach of paragraph 2.B.

The caselaw on which Defendant relies to support a conclusion to the contrary is distinguishable. *See Deutsche Post*, 116 F. App'x at 438-39; *Aerotek*, 377 F. Supp. 3d at 547-48. In *Deutsche Post*, the court held that a restrictive covenant was unenforceable when it precluded an employee "from engaging in any activity which may affect adversely the interests of the [employer] or any Related Corporation and the businesses conducted by either of them." *Deutsche Post*, 116 F. App'x at 438-39 (emphasis and quotation marks omitted) (reasoning that the restrictive covenant barred employees from engaging in any type of competition with the employer, even if they never solicited or serviced the employer's clients, and that the "language, taken literally, would restrict [the employees] even from using a competitor's mail service for any purpose, business or personal"). The language of the restrictive covenant in *Deutsche Post* is considerably broader than the language in paragraph 2.B.

In *Aerotek*, the court held that a restrictive covenant was unenforceable when it precluded an employee from becoming employed by "any business that is engaging in or preparing to engage in any aspect of [the employer's] Business for which [the employee] performed services or about which [the employee] obtained Confidential information." *Aerotek*, 377 F. Supp. 3d at 547-48 (quotation marks omitted) (reasoning that the restrictive covenant barred an employee from working for any business that competes in the areas in which the employee worked, regardless of the employee's actual job at the business, which was not tailored to preventing the employee from drawing upon the goodwill that she generated for the employer). In contrast, the language in paragraph 2.B is tailored to preclude Defendant from drawing on the goodwill that he developed with specific clients during the final year of his employment. Paragraph 2.B is not overly broad.

Defendant also asserts that Plaintiff materially breached his employment agreement by failing to timely pay his salary and expense reimbursements and by failing to pay him earned bonuses, thereby relieving him of all obligations under the Agreement. As the Agreement does not contain provisions regarding salary, expenses, or bonuses, *see* D. Exh. 7, and neither party has sufficiently briefed the issue of whether, in analyzing if a material breach occurred, the Court should look at the Agreement alone or at more expansive terms of the employment relationship, the Court cannot conclude, at this preliminary injunction stage, that any failure to timely pay Defendant's salary and expenses or pay him bonuses relieved him of his obligations under the Agreement.

In sum, Plaintiff has demonstrated a substantial likelihood of success on the merits in its claims that Defendant breached paragraphs 1.C and 2.B of the Agreement but did not demonstrate a substantial likelihood of success as to any other paragraph. The Court therefore focuses on paragraphs 1.C and 2.B for the remainder of its preliminary-injunction analysis.

### C. Irreparable Injury

An irreparable injury is one that cannot be undone through monetary remedies. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (stating that injuries "in terms of money, time and energy necessarily expended in the absence of a stay, are not enough"). However, "when a later monetary judgment might undo an alleged injury, the alleged injury is irreparable if damages would be difficult or impossible to calculate." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (quotation marks omitted).

Defendant acknowledged by signing the Agreement that any breach "will cause irreparable harm to [Plaintiff] and entitle [Plaintiff] to injunctive or other equitable relief, as well as damages."

D. Exh. 7. This provision alone, however, does not satisfy Plaintiff's burden to demonstrate irreparable injury. *See Anago Franchising, Inc. v. Chmi, Inc.*, No. 09-60713, 2009 WL 5176548, *11 (S.D. Fla. Dec. 21, 2009) (stating that a contractual provision providing that a party would be entitled to an injunction upon a breach was "not alone dispositive of the issue of irreparable harm, and [did] not insulate a plaintiff seeking a preliminary injunction from the need to prove that it will suffer imminent irreparable injury as a result of the defendant's conduct" (alteration and quotation marks omitted)).

It would be difficult or impossible to quantify monetary damages based on Defendant's failure to return Plaintiff's material and information. It also would be difficult or impossible to quantify monetary damages based on Defendant's provision of professional consulting services to clients to whom he provided services for Plaintiff. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (stating that a loss of customers and goodwill is an irreparable injury); *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (affirming a conclusion that an employer would suffer irreparable injury by losing its investment in goodwill and its long-time customers if an employee was permitted to compete against the employer). Plaintiff has satisfied its burden to show irreparable injury.

### D. Balance of Harms

This threat of irreparable injury to Plaintiff outweighs the damage that an injunction enforcing paragraphs 1.C and 2.B of the Agreement may have on Defendant. First, there is no harm in requiring Defendant to return Plaintiff's material and information as required under

paragraph 1.C. In fact, Defendant testified that he has returned all of Plaintiff's material and information and that he does not need it.[3] T. 171.

Second, the harm in enforcing paragraph 2.B is not great. The paragraph bars Defendant from rendering professional consulting services only to a limited body of clients: those clients to whom he rendered services during the final year of his employment. The paragraph is limited in duration to one year following the termination of his employment. Plaintiff satisfied this step of the preliminary-injunction analysis.

### E. Public Interest

Finally, a preliminary injunction is not adverse to the public interest. The enforcement of a restrictive covenant that an employer and employee have agreed upon that has not been invalidated serves the public interest. *See 7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1230 (M.D. Fla. 2013) ("A preliminary injunction enforcing the restrictive covenants will serve the public interest, because enforcement of a valid restrictive covenant encourages parties to adhere to contractual obligations."). Plaintiff satisfied this step of the preliminary-injunction analysis. Thus, Plaintiff is entitled to a preliminary injunction enforcing paragraphs 1.C and 2.B of the Agreement.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for a Preliminary Injunction [DE 13] is **GRANTED IN PART AND DENIED IN PART**.

A preliminary injunction is **GRANTED** as follows:

---

[3] Although paragraph 1.C also requires Defendant to certify that he has returned all of Plaintiff's material and information and no longer has any rights to such, Plaintiff has not sought a certification in either its Complaint or its Motion for a Preliminary Injunction. *See* DE 1; DE 13; *see also* Fed. R. Civ. P. 7(b)(1)(C), 8(a)(3) (requiring pleadings and motions to state the relief being sought).

1. Jesus Felix Minjares Soule shall immediately return to Highland or to Highland's clients all materials and information, and any copies thereof.

2. For a period of twelve (12) months following the date of termination of Jesus Felix Minjares Soule's employment, he shall not render professional consulting services, for his own account or for others, for any client of Highland for which he performed any services during any part of the year immediately preceding the termination of employment.[4]

For the purpose of applying the preceding two paragraphs, "Highland" encompasses The Highland Group and any of its affiliates, per the Agreement. *See* D. Exh. 7.

A preliminary injunction is **DENIED** as to any other issue.

As the parties are aware, the Court agreed not to issue a Trial Order in this matter until it issued an Order on the Motion for a Preliminary Injunction. Accordingly, the parties shall file by **March 25, 2020**, a Joint Notice indicating whether this case has resolved in light of this Order. The Court will issue a Trial Order if the case has not resolved.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 17th day of March, 2020.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[4] Plaintiff made requests in its Motion for a Preliminary Injunction that exceed the scope of the Agreement at issue. *See* DE 13 at 19-20, ¶¶ c-e. The Court concludes that these matters should instead be handled through the discovery process.