UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:19-CV-81636-ROSENBERG/REINHART

THE HIGHLAND CONSULTING GROUP,

    Plaintiff,

v.

JESUS FELIX MINJARES SOULE,

    Defendant.

_____/

## MEMORANDUM OPINION ON THE
## ENFORCEABILITY OF THE LIQUIDATED DAMAGES CLAUSE

In the parties' Amended Notice of Remaining Issues at DE [188], the parties informed the Court that they disagreed over "Whether the liquidated damages clause of the [Non-Disclosure] Agreement is enforceable." DE 188 at 2. In relevant part, the liquidated damages clause provides that if, within the first twelve months after the employee's termination, the former employee solicits or sells "professional services that are competitive with" Plaintiff's, or the former employee "work[s] or render[s] professional services" to a client for which Plaintiff has solicited or performed professional services within the preceding twelve months, the former employee shall reimburse Plaintiff "fifty percent (50%) of any fees derived from Highland clients." The precise language of the clause in the Non-Disclosure Agreement is as follows:

> D) Regardless of circumstances, should such a relationship as discussed in paragraphs A, B, or C above come into existence, either directly or through a third party, the Employee agrees in recognition of extensive marketing expense incurred by Highland to a reimbursement of fifty percent (50%) of any fees derived from Highland clients. In addition, if the Employee accepts employment with a Highland client, a placement fee of thirty-five percent (35%) of total first year income will be due Highland.

The Court held a hearing on January 6, 2022, at 10:00 AM pursuant to a paperless order at DE 198, to attempt to resolve this question prior to trial, recognizing that this issue would impact the parties' respective litigation strategies and the joint proposed jury materials. At the hearing, the parties presented evidence and questioned one witness, James Kerridge, CEO of The Highland Consulting Group.

Based on the evidence presented, the Court now holds that the liquidated damages clause (paragraph 2.D of the Non-Disclosure Agreement) is enforceable under Maryland law. As a preliminary matter, the Court conducts its analysis under Maryland law because the parties agreed in the Non-Disclosure Agreement that Maryland law would govern that contract. Second, "[t]he party seeking to set aside the bargained for liquidated damages clause has the burden to prove that the clause should not be enforced." *Barrie School v. Patch*, 933 A.2d 382, 388 (Md. 2007). Because the Defendant challenged the validity of the liquidated damages clause here, he bore the burden of proof. But Defendant did not meet his burden, so the liquidated damages clause is enforceable for the following reasons.

For a liquidated damages clause to be enforceable, it must satisfy three elements. "First, such a clause must provide 'in clear and unambiguous terms' for 'a certain sum'. Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach. Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact." *Bd. of Educ. of Talbot Cnty. v. Heister*, 896 A.2d 342, 352 (Md. 2006) (internal quotations omitted). The

Defendant argues that the clause fails to satisfy any of the three elements; the Court will address each argument in turn.

First, Defendant contends that the clause, which requires that Defendant reimburse Plaintiff 50% of "any fees derived from Highland clients," is not a "certain sum." Specifically, he contends that the amount of damages owed was not ascertainable at the time of breach because it includes any past, current, and future compensation from Plaintiff's former client. In other words, Defendant argues that the reach of this clause applies to client fees paid *after* the breach occurs.

The Court disagrees with this interpretation. Defendant is correct that Maryland law requires the amount to be ascertainable *at the time of breach*. *Heister*, 896 A.2d at 353. But contrary to Defendant's argument, the NDA language at issue here does provide for an amount that is ascertainable upon breach. Critically, the liquidated damages clause provides that Defendant owes "50% of any fees *derived*" from Plaintiff's former clients. The verb "derived" is past tense, meaning that the Defendant would owe only those fees that he had already received from Plaintiff's former clients.

Defendant rests his argument in part on *Massachusetts Indemnity & Life Insurance Co. v. Dresser*, 306 A.2d 213 (Md. 1973), but this case is readily distinguishable. In *Dresser*, former employees challenged the liquidated damages clause in a two-year restrictive covenant. There, the damages were not calculable until a year after the two-year restrictive covenant had elapsed—more than three years after the termination of employment—and were dependent on "the continued payment of premiums on policies sold." *Id.* at 216. The court held that the clause was unenforceable because the amount of damages was not ascertainable at the time of breach. *Id.* But unlike *Dresser*, the language of Section 2.D is retrospective only, in that it does not depend on fees

3

paid after the breach has terminated or the twelve-month non-compete term has elapsed. It depends only on the amount that has been paid by the point the breach occurs.

Two examples help illustrate the point. Assume *arguendo* that Defendant began consulting for a former client three months into the non-compete period and continued through the end of the twelve-month non-compete period. At the end of that twelve-month period, the amount that Defendant would have received in fees would be finite and ascertainable—the fees earned would represent a "sum certain" because the Court would simply look back at the fees paid to Defendant during the twelve-month non-compete period. If, on the other hand, Defendant merely solicited the former client's business but never received the work, he presumably would have not received any "fees" by the time the breach occurred; nevertheless, the amount of damages would be easily calculable at the time of breach. In either circumstance, the amount of damages would be ascertainable at the time of breach.

Second, Defendant argues that the amount of the damages provided for in Section 2.D is "grossly excessive" and not a reasonable estimation of the damages expected to result from a breach of contract. *Traylor v. Grafton*, 332 A.2d 651, 660 (Md. 1975). This is because, he explains, Plaintiff usually tries to achieve around a 15% profit margin for its consulting projects.[1] Defendant contends that requiring Defendant to reimburse Plaintiff 50% of any fees received from former clients amounts to a windfall for Plaintiff. He argues that a 50% reimbursement, compared to a 15% net profit margin, is grossly excessive. But as Mr. Kerridge, Plaintiff's CEO, testified at the hearing, Plaintiff actually achieves an average rate of profit of 54% on consulting projects. He explained that the 15% profit margin rate is calculated after subtracting overhead and administrative costs, marketing costs, and the expenses of soliciting new business from the 54%

---

[1] Defendant relies on the deposition testimony of a Mr. Saville to support this proposition.

average project profit rate (after sales costs). Mr. Kerridge further testified that the 50% reimbursement rate in the NDA sought to compensate Plaintiff for various losses (e.g., lost profits from existing projects (based on the average rate), reputational damages, lost goodwill and lost future business opportunities—both with the former client and by way of referrals) that Plaintiff would incur if the Defendant breached the NDA. Mr. Kerridge's testimony was supported by Exhibit 113 presented at the hearing.

As to Defendant's argument, the Court finds that the 50% reimbursement rate is a reasonable estimation of the damages expected to result from a breach of contract. Importantly, the inquiry is whether the "amount [wa]s a reasonable forecast of just compensation *at the time the contract was made . . . ." Heister*, 896 A.2d at 352. This means that the Court cannot conduct a post-hoc analysis: The Court may not compare the contractual forecast with the actual damages incurred to determine reasonableness. Based on Mr. Kerridge's testimony and the evidence, which was not refuted at the hearing, the Court finds a 50% reimbursement fee to be a reasonable projection of the losses that Plaintiff would face if Defendant breached the terms of the NDA. In other words, the 50% reimbursement rate is not grossly excessive.

Finally, Defendant contends that the clause is capable of being "altered to correspond to actual damages determined after the fact." *Heister*, 896 A.2d at 352. The Court does not see how the amount provided for in Section 2.D could be modified or altered after the fact. The language is flexible, certainly, in that it provides for a percentage value rather than a fixed sum. But this is to accommodate breaches of varying degrees or scales. If an employee poached three former clients, for example, rather than just one, it would make sense that the amount of damages provided for would adjust accordingly. Additionally, the language in Section 2.D is readily distinguishable from the language in *Dresser*, for example. There, at issue was a restrictive employment covenant,

5

which provided that the employee could not sell life insurance in the local area for a period of two years after the employee's termination. The penalty provision provided that "In the event of any breach of this Paragraph B, the Company *may* declare that no further commissions shall accrue or be paid under this Contract." *Id.* at 215 (emphasis added). The linchpin to the court's analysis was the discretionary "may." The court held that the clause was unenforceable because the clause's discretionary nature meant that the amount of damages awarded could be altered after the fact. *Id.* at 217.

For the foregoing reasons, the liquidated damages clause is enforceable under Maryland law. **DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 6th day of January, 2022.

_____
ROBIN L. ROSENBERG
United States District Judge