UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:19-cv-81636-RLR

THE HIGHLAND CONSULTING
GROUP, INC.,

       Plaintiff,

vs.

JESUS FELIX MINJARES SOULE,

       Defendant.

_____/

### REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT [ECF No. 461]

Plaintiff The Highland Consulting Group, Inc., moves for summary judgment awarding it all funds in a garnished brokerage account. There are genuinely disputed issues of material fact that preclude summary judgment. It is therefore RECOMMENDED that the motion be DENIED and this matter be set for trial.

## I.    UNDISPUTED FACTS

1.    Claimant is the Defendant's father. ¶1.[1]

2.    Claimant does not speak English. ¶¶34, 45, 73, 82, 85.

3.    On June 26, 2017, the Claimant and his wife, Sofia Martha Soule de Minjares, opened an account with Bolton Global Capital bearing an account number with the last four digits of 2064 ("Claimant's Bolton Account"). ¶2.

---

[1] Unless otherwise noted, citations to paragraphs ("¶") are from the Plaintiff and Claimant's Statements of Material Facts. ECF Nos. 462, 478.

4.      On the Bolton New Account Agreement, the Claimant rated his general knowledge investment experience as "moderate." ¶3.

5.      On the Bolton New Account Agreement, the Claimant stated his total net worth was between $10,000,000.00 and $20,000,000.00. ¶4.

6.      The Claimant has been investing his money for over 30 years. ¶5.

7.      The Claimant completed a Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding and Reporting, W-8BEN form, in conjunction with opening the Claimant's Bolton Account. ¶6.

8.      On August 18, 2017, the Claimant and his wife wrote to Bolton with instructions to "liquidate all of the positions held in [account number xxxx-2064]; and thereafter, transfer the proceeds to our son, Jesus Felix Minjares Soule, who maintains an account with your institution bearing account number [xxxx-]2536. We understand that we are relinquishing all rights and interest to the above referenced account. Proceed to close the account once all assets have been transferred." ECF No. 462-4.

9.      The Defendant had an account at Bolton Global Capital; the last four digits of the account number were 2536 ("Defendant's Bolton Account"). ¶9.

10.     On August 25, 2017, Bolton transferred $688,879.97 from the Claimant's Bolton Account to the Defendant's Bolton Account. ¶10.

11.     On September 5, 2017, Bolton transferred $100,000.00 from the Claimant's Bolton Account to the Defendant's Bolton Account. ¶11.

12.     On January 6, 2019, the Defendant opened a Transfer on Death Individual retail brokerage account at Fidelity Brokerage Services LLC ("the Fidelity Account"). ¶12, ECF No. 331.

13.     The Fidelity New Account Profile identified the account as an individual transfer on death (TOD) account, with the Defendant as the account owner. ECF No. 462-7. The New Account Profile listed Rebeca Garcia, Nina Minjares, Suri Minjares, and Dana Minjares as the beneficiaries on the Fidelity Account. ¶14; ECF No. 462-7. The Claimant was not a listed beneficiary on the Fidelity Account. ¶15.

14.     On an unspecified date, the Defendant requested that Fidelity transfer funds from the Defendant's Bolton Account to the Fidelity Account. ¶16. The Fidelity Transfer of Assets form identified the Fidelity Account and the Defendant's Bolton Account as "individual" accounts and listed the Defendant in the respective boxes for "Account Owner/Trust/Entity Name(s)". ¶17. Claimant was not listed anywhere on this document. ECF No. 462-8. The Fidelity Transfer of Assets form did not state that the Fidelity Account was a "trust". ¶18.

15.     On an unspecified date, the funds in Defendant's Bolton Account were transferred to the Fidelity Account. ¶19.

16.     In 2019, the Claimant had an account with Sun Life Financial Investments (Bermuda) Ltd. that had the last four digits 0660 ("Claimant's Bermuda Account"). ¶20. The account commencement date for the Claimant's Bermuda Account was April 7, 2014. ¶21. The Claimant's Investment Products Withdraw Request for the Claimant's Bermuda Account requested a "Full Withdrawal" of the

funds in the Claimant's Bermuda Account. ¶23. The funds in the Claimant's Bermuda Account were transferred to an account in the Claimant's name at Commerce Bank with an account number having the last four digits of 1087. ¶24.[2]

17.　The Claimant did not transfer any funds from the Claimant's Bermuda Account directly to the Fidelity Account. ¶26.

18.　The Claimant did not transfer any funds from the Claimant's Bolton Account directly to the Fidelity Account. ¶27.

19.　Since January of 2019, the Claimant has not paid any taxes for the funds in the Fidelity Account. ¶28.

20.　Defendant's 2020 tax return listed "Fidelity – various securities" with net loss of $12,474. ECF No. 462-13.

21.　The Defendant's 2020 Form 8949 Sales and Other Dispositions of Capital Assets on the Defendant's 2020 tax return listed "Fidelity – Various Securities" with "Proceeds" of $2,668,300.00 and "Cost or other basis" of $2,703,104.00. Flores Dep. ECF No. 462-14.

22.　On February 8, 2022, a Final Judgment for $1,200,000 was entered in favor of Plaintiff and against Defendant, Jesus Felix Minjares Soule. ECF No. 250.

23.　On April 21, 2022, a writ of garnishment was issued to Fidelity Brokerage Services LLC ("Fidelity") for any assets in its possession belonging to the Defendant. ECF No. 297.

---

[2] There is no evidence cited from the record to show what happened to the Commerce Bank funds.  In particular, there is no cited evidence that they are part of the current funds in the Fidelity Account.

24.     In its answer to the writ, Fidelity identified the Fidelity Account and an IRA account. ECF No. 331.

25.     On April 7, 2022, the Defendant had submitted a fact information sheet in aid of collection of the judgment in this litigation which did not disclose the Fidelity Account. ¶29.

26.     On April 11, 2022, the Defendant submitted a One-Time Withdrawal – Retirement request in an attempt to transfer $716,500 from the Fidelity Account to an account in the Defendant's name at Capital Security Bank Ltd. in the Cook Islands. ¶¶103, 112.

27.     On May 31, 2022, Claimant moved to intervene and to dissolve the writ, asserting that the funds in the brokerage account belonged to him. ECF No. 363.

28.     In support of his motion, and as required by Florida Statute §77.16, Claimant submitted an affidavit under penalty of perjury dated May 30, 2022. ECF No. 363-1 ("Initial Affidavit.")

29.     The Initial Affidavit swore (among other things):

- The Fidelity account was funded exclusively with Claimant's funds "and at all times relevant, the funds in the account belonged to me." ECF No. 363-1 ¶10.

- Claimant had consolidated his accounts at Bolton Global Capital and Sun Life Financial into the Fidelity Account in his son's name. ECF No. 363-1 ¶¶ 7, 9

- Defendant was to manage the Fidelity account as trustee for the Claimant. *Id.* ¶7.

- "I instructed my son that he should pay to me the income generated from this account, and such other amounts as I may require from time to time, and that the remainder of the funds should be used for education, health and well-being of my son's three daughters. The funds were not intended for my son's personal use. My son agreed to act as trustee of the funds under these terms." *Id.* ¶8.

30. Claimant was deposed on October 12, 2022. ECF No. 462-1 ("Flores Dep."). He testified:

- He did not have the Initial Affidavit translated word-for-word from English to Spanish before signing it. Flores Dep. at 8 (28:6-10).

- Only "part" of the Initial Affidavit was translated from English to Spanish before the Claimant signed the Initial Affidavit. Flores Dep. at 8 (26:25 through 27:1–2).

- When the Claimant had the Initial Affidavit translated from English to Spanish the Claimant was just told, "this is what it's about." Flores Dep. at 8 (28:6– 11).

31. When shown the Initial Affidavit at his deposition, the Claimant testified he could not tell whether the statements in it were true or false because he did not understand the document. Flores Dep. at 9 (Ex.1, 30:10–14).

32.     The Initial Affidavit uses the term "garnishment." ¶46. The Claimant had never heard the term "garnishment" before his deposition. Flores Dep. at 12 (44:20-25,45:2).

33.     The Initial Affidavit uses the term "myriad". ¶48. The Claimant did not know what the term "myriad" meant. Flores Dep. at 14 (50:17–19).

34.     On June 21, 2022, a superseding writ of garnishment was issued to Fidelity. ECF No. 382.

35.     By Order dated June 29, 2022, the Court dissolved the original writ as moot. ECF No. 399.[3]

36.     Fidelity's answer to the superseding writ said that it maintained the following assets registered solely to Defendant:  a "Transfer on Death Individual retail brokerage account containing cash invested in a money market fund in the amount of $726,978.17." ECF No. 406.

37.     On August 3, 2022, Claimant filed a Motion to Intervene to Dissolve [the superseding] Writ of Garnishment. ECF No. 411.

38.     Attached to the Motion to Intervene was an affidavit under penalties of perjury dated August 1, 2022 ("New Affidavit").  ECF No. 411-1.

39.     The Claimant did not type the New Affidavit. ¶76.

40.     With regard to the New Affidavit, Claimant testified at his deposition:

---

[3] Plaintiff conceded that the IRA account was exempt from garnishment. ECF No. 399 n.1.

- The New Affidavit was explained to Claimant in general terms, but he did not recall what had been explained to him or by whom it had been explained. ¶74; Flores Dep. at 15 (54:6-55:7, 56:17-24).[4]

- Before the New Affidavit was brought to him, the Claimant did not provide anyone with his recollection as to what was in the Claimant's Bolton Account. Flores Dep. at 16 (58:18–22).

- The New Affidavit "was brought to me. It was explained in general terms, and I signed it and that was it." Flores Dep. (58:15–17).

- The New Affidavit was generally translated from English to Spanish by the Claimant's daughter-in-law, who "does not know English perfectly." Flores Dep. at 31 (119:2–7).

- The New Affidavit was not translated from English to Spanish word-for-word before the Claimant signed it. Flores Dep. at 31 (119:8–13).

41.    The New Affidavit restated the same facts as the Initial Affidavit, but added five new paragraphs (¶¶ 10, 11, 12, 17, 18). The new paragraphs swore:

- The funds from the Claimant's Bolton Account were first transferred to the Defendant's Bolton Account before being transferred to the Fidelity Account. ECF No. 411-1 ¶¶ 10, 11.

---

[4] Claimant asserts that he testified that he could not recall who, other than his lawyers, explained the New Affidavit. The record does not support this assertion. Claimant was asked who explained the New Affidavit. Counsel objected and instructed him not to disclose attorney-client communications. He then said, "I don't recall." Flores Dep. at 15. His answer did not suggest that his lawyers had explained the New Affidavit to him.

- "Any documentation I was required to provide Bolton global capital to effectuate the transfer and closing of my account was pursuant to their requirements. It did not in any way change the agreement and understanding between me and my son." *Id*. ¶10.

- Funds from the Claimant's Sun Life Financial account were transferred to the Fidelity Account. *Id*. ¶ 12.

- Claimant was not aware of — and neither requested nor approved — an attempt to transfer funds from the Fidelity Account to an account in the Cook Islands. *Id*. ¶17.

- "At no time were the funds in the Fidelity account a gift to [the Defendant]." *Id*. ¶18.

42.     On October 28, 2022, Plaintiff moved for Final Summary Judgment on Claimant's claim to the funds in the Fidelity Account. ECF No. 461.

43.     In opposition to the Motion for Summary Judgment, Claimant resubmitted the Initial Affidavit, ECF No. 412, and submitted an affidavit under penalty of perjury from the Defendant dated November 17, 2022 ("Defendant's Affidavit"). ECF No.478-1

44.     The Defendant's Affidavit swore (among other things):

- "Although the Fidelity Account is titled in my name, all of the funds in the Fidelity Account belong to my father and he was the source of those funds." ECF No. 478-1 ¶4.

9

- "My father does not live in the U.S. nor does he understand English, but I do." *Id*. ¶5.

- "He put his U.S. funds in the Fidelity Account because it was easier and more practical for me to manage his investments in the U.S." *Id*. ¶6.

- "I agreed with my father to manage the Fidelity Account and to pay him the interest that was generated from the account and any other amounts that he may need or request." *Id*. ¶7.

- "Based on our agreement, I was to act as trustee of my father's funds in the Fidelity Account and wants to keep him informed of the account." *Id*. ¶8.

- "There was no structure or form to the updates, but I let him know how the funds were doing during our conversations about a variety of family issues." *Id*. ¶9.

- The funds in the Fidelity Account were never a gift to me from my father, nor have I ever declared them to be a gift." *Id*. ¶10

- "The funds in the Fidelity Account have been managed by me as a trustee for my father." *Id*. ¶11.

- I do not recall ever telling a representative of Fidelity that the funds in the Fidelity account were a gift to me by my father, because that would not have been accurate. I do not know why a representative of Fidelity may have created a note in their internal documents to that effect." *Id*. ¶12.

- "I never sought to repatriate funds to the Cook Islands, as I do not live there nor have I ever lived there." *Id*. ¶13.

- At various times, I made deposits into the Fidelity account from the Citibank account ending in 0299, which belongs to me and my wife as tenants by the entireties." *Id*. ¶14.

- "These deposits were repayments to my father for loans he had agreed to make to me, on various occasions, from the funds in the Fidelity Account." *Id*. ¶15.

- "My father had an account with Sun Life and, when he closed that account sometime about June 2019, he sent proceeds to my Citibank account for me to put in the Fidelity account, which I did in July 2019." *Id*. ¶16.

45.    Both the Initial Affidavit and the New Affidavit say that Claimant decided to consolidate his assets under his son's management "[a]fter due consideration of the advice of tax and accounting professionals." ECF No. 411-1 ¶7, ECF No. 363-1 ¶7. At his deposition, the Claimant could not recall the name of one tax professional referenced in his Affidavit. ¶50.

46.    At his deposition, the Claimant testified:

- He could not testify as to exactly how much income Defendant had paid him since 2019. Flores Dep. at 8 (29:15–19).

- He could not identify exactly how much money he was trying to recover in this action, but estimated it was between $1 million and $2 million. Flores Dep. at 9 (31:13–21).

- He intended for the funds in the Fidelity Account to pass to the Defendant by inheritance unless they were fully expended or transferred out of the Fidelity Account before the Claimant and his wife die. Flores Dep. (33:19–25; 34:1–9).

- He has not requested nor seen any statements regarding the funds in the Fidelity Account. Flores Dep. at 13-14 (35:14–17, 49:10–12, 49:22–24; 50:1).

- He was not aware in advance of an attempted transfer from the Fidelity Account to the Cook Islands. Flores Dep. at 17 (63:17–20, 93: 15-22).

- He did not know the purpose of the request for a one-time withdrawal of $716,500 from the Fidelity Account on April 11, 2022. Flores Dep. at 21 (79:22–25, 80: 1–3).

- The Defendant administered the funds in the Fidelity Account "as an emergency fund or estate planning fund for the family." Flores Dep. at 9 (32:12–18).

- The Defendant did not always have to get permission from the Claimant to use the funds in the Fidelity Account. Flores Dep. at 10 (35: 1–9).

- The Defendant had discretion to use the funds in the Fidelity Account for family-related emergencies. Flores Dep. at 22 (82: 25, 83:1–2).

12

- The Defendant did not provide the Claimant with any statements regarding the funds in the Fidelity Account. Flores Dep. at 10 (35:14–17).

- Prior to bringing this action, the only people who had knowledge regarding the agreement between the Claimant and the Defendant regarding the Fidelity Account were the Claimant, the Defendant, the Claimant's wife, and Claimant's son Carlos. Flores Dep. at 24 (Ex.1, 92:10–24).

47.    The Claimant did not know how much money was in the Fidelity Account. ¶56.

48.    The Claimant has not received any email communication from Fidelity. ¶61.

49.    The Claimant has never tried to log in online to an account at Fidelity. ¶62.

50.    The Claimant did not know the account number for the Fidelity Account. ¶65.

51.    The Claimant has not spoken with anyone at Fidelity regarding the Fidelity Account. ¶66.

52.    The Claimant was not aware there was a $1.2 million dollar jury verdict rendered against the Defendant. ¶67.

53.    The Claimant did not know why the funds at issue in the Fidelity Account have been frozen. ¶68.

54.     Everything the Claimant knows about the Fidelity Account comes from conversations with the Defendant. ¶83.

55.     There is no written documentation between the Claimant and the Defendant regarding the Defendant managing the funds in the Fidelity Account for the benefit of the Claimant. ¶90.

56.     There are no documents between the Claimant and the Defendant that state the funds in the Fidelity Account belong to the Claimant. ¶91.

57.     The Claimant has not declared any of the funds in the Fidelity Account to the U.S. Internal Revenue Service. ¶53; Flores Dep. at 9 (31:22-24).

## II.     DISCUSSION

*Legal Principles*

With statutory exceptions not applicable here, a judgment creditor can use a writ of garnishment to seize "any tangible or intangible property of [the debtor] in the possession or control of a third party. Fla. Stat. §77.01. "If any person other than the [debtor] claims that . . . the property in the hands or possession of any garnishee is that person's property and shall make an affidavit to that effect, the court shall empanel a jury to determine the right of property between the claimant and [creditor] unless a jury is waived." Fla. Stat. §77.16.

Plaintiff moves for summary judgment that the funds in the Fidelity Account belong to Defendant. The standard for summary judgment is well-settled:

> Summary judgment is authorized only when, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *See* Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *See Adickes*, 398 U.S. at 157.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

*Those Certain Underwriters at Lloyd's Subscribing to Policy No. 25693JB v. Capri of Palm Beach, Inc.*, 932 F. Supp. 1444, 1446 (S.D. Fla. 1996), *aff'd sub nom. Certain Underwriters v. Capri*, 128 F.3d 732 (11th Cir. 1997) (J. Moreno).

The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues ... are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (emphasis in original) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. In State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). "For issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.'" *Id.* (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1437–38).

*Nunez v. Coloplast Corp.*, No. 19-CV-24000, 2020 WL 2561364, at *1 (S.D. Fla. May 20, 2020) (J. Singhal). An issue is genuine if "a reasonable trier of fact could return

judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

A party can support or oppose summary judgment through a declaration or affidavit "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "An affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated." *United States v. Stein,* 881 F.3d 853, 854 (11th Cir. 2018) (en banc). The affidavit cannot be conclusory and must be based on personal knowledge or observation. *Id.* at 857. It need not be corroborated by independent evidence. *Id.* at 858.

Plaintiff, as the garnishor, has the burden of proving that the funds in the Fidelity Account belong to the Defendant, not to the Claimant. *Branch Banking &*

*Tr. Co. v. ARK Dev./Oceanview, LLC,* 150 So. 3d 817, 820 (Fla. Dist. Ct. App. 2014). The parties agree that there is a rebuttable presumption that funds on deposit at a financial institution belong to the person or entity named as the owner of the account. *Id.*; ECF No. 477 at 10; ECF No. 461 at 11. That presumption can be overcome by evidence that the account holder lacks equitable title, that is, proof that the funds — in fact — belong to someone other than the debtor. *See Ginsberg v. Goldstein,* 404 So. 2d 1098 (Fla. Dist. Ct. App. 1981).[5]

*Procedural Issues*

### Resolution by Motion for Summary Judgment

Claimant asserts that it is procedurally improper to resolve this dispute on a motion for summary judgment. He argues that he is entitled to a jury trial once he files an affidavit as required by Florida Statute §77.16. ECF No. 477 at 5-6. He is wrong. If there are no genuinely disputed material facts, the Court can resolve ownership of garnished assets as a matter of law. *See, e.g., Physicians Care Centers of Florida, LLC v. PNC Bank, Nat'l Ass'n,* 345 So. 3d 907, 911 (Fla. Dist. Ct. App. 2022) (affirming summary judgment in garnishment action).

---

[5] Claimant contends that the presumption plays no role at the summary judgment stage because there are genuine issues of material fact that defeat the presumption. ECF No. 477 at 10-11 (citing *Atlas IP, LLC v. Medtronic, Inc.*, No. 13-23309-CIV, 2014 WL 5040317, at *16 (S.D. Fla. Oct. 8, 2014) (discussing how the presumption of laches can be overcome by a genuine issue as to either factual element of a laches defense)); *Kaufman v. Wyeth, LLC*, No. 1:02-CV-22692, 2011 WL 10483576, at *7 (S.D. Fla. Aug. 15, 2011) (refusing to apply the presumption of a non-defective design under the Government Rules Defense where defendants "fail[ed] to demonstrate the absence of a genuine issue of material fact as to Plaintiff's ability to rebut the presumption); *Rydzewski v. DePuy Orthopaedics, Inc.*, 11-80007-CIV, 2012 WL 7997961, at *2 (S.D. Fla. Aug. 14, 2012) (same)).

<u>Failure to Join Indispensable Party</u>

Plaintiff's Motion for Summary Judgment alleges, for the first time in this litigation, that the Court lacks subject matter jurisdiction because Claimant failed to join his wife, who is an indispensable party. Federal Rule of Civil Procedure 19 says that, under some circumstances, indispensable parties must be joined in the litigation. The Rule requires a two-step analysis:

> First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003). "[T]he party seeking to join a non-party under Federal Rule of Civil Procedure 19 bears the burden of proof in establishing that the non-party is needed for a just adjudication." *Rodriguez v. Niagara Cleaning Services, Inc.*, 09-22645-CIV, 2010 WL 11505477, at *4 (S.D. Fla. Jan. 11, 2010) (J. Ungaro).

The totality of the discussion of this issue in Plaintiff's motion is:

> The Claimant's failure to join his wife is fatal to his claim. The Claimant's wife, Sophia M Soule de Minjares, is an indispensable party because she is claiming an interest in the funds in the Fidelity account. Sophia M Soule de Minjares cannot be joined because she is a Mexican national who this Court would not have personal jurisdiction over without her being joined by the Claimant. Because the Claimant failed to join Sophia M Soule de Minjares, there is no subject matter jurisdiction over the claimants claim against the funds in the Fidelity account. *C.f. Rhein v. Kevelson,* 14-61830-CIV, 2014 WL 6694744, at *2 (S.D. Fla. Nov. 26, 2014).

ECF No. 461 at 15.

18

Even assuming this argument is sufficiently developed, I reject it for several reasons. *See Beres v. Daily Journal Corp.,* 0:22-CV-60123-WPD, 2022 WL 805733, at *6 n.6 (S.D. Fla. Mar. 8, 2022) (J. Dimitrouleas) ("It is axiomatic that arguments not supported and properly developed are deemed waived.") (citation omitted). First, failure to join an indispensable party does not deprive the Court of subject matter jurisdiction. By its clear terms, Rule 19 presumes that valid subject matter jurisdiction exists without joinder of the additional party; the first clause of the Rule says, "A person who is subject to service of process and whose joinder *will not deprive the court of subject-matter jurisdiction* must be joined as a party if . . ." Fed. R. Civ. P. 19(a) (emphasis added). The Rule then lists circumstances when the additional party must be joined, Fed. R. Civ. P. 19(a)(1)(A), (B). Even if the person's joinder is otherwise required under Rule 19(a)(1), the case can proceed without them if their joinder is not feasible and other conditions are met. Fed. R. Civ. P. 19(b). So, as a matter of logic, there are situations when the Rule allows the Court to exercise subject matter jurisdiction and proceed without an indispensable party.

Second, Ms. Soule de Minjares' has not asserted a claim challenging the writ of garnishment. Although I need not resolve this question, under Florida law, a person who fails to timely assert a third-party claim likely waives any later challenge to a writ of garnishment. *See Antuna v. Dawson,* 459 So. 2d 1114 (Fla. Dist. Ct. App. 1984).[6]

---

[6] I assume that as the spouse of the Claimant, Ms. Soule de Minjares has notice of these proceedings.

Third, even if Ms. Soule de Minjares' claims were not waived, Plaintiff has not shown that equity and good conscience prevent this matter from proceeding in her absence. Fed. R. Civ. P. 19(b). Should the Claimant prevail, it is unlikely that there will be litigation between the joint owners of the funds. There is no indication that Ms. Soule de Minjares' relationship to the funds is different from Claimant's, so should Plaintiff prevail Ms. Soule de Minjares' interests will have been adequately represented by Claimant. Plaintiff has not articulated any prejudice it will suffer if Ms. Soule de Minjares is not joined as a party. Finally, Claimant would not have an adequate remedy if this action were dismissed for nonjoinder.

*Merits*

Claimant's Response accurately summarizes the parties' positions:

> As a factual matter, the parties in this garnishment action have two diametrically opposed positions on ownership of the monies in the Fidelity account: Plaintiff claims that the monies were a gift to the Defendant and the Claimant has no right to the funds. Claimant's position is that the funds are his; that he and his son entered into an [oral] agreement whereby the Defendant would manage the funds as trustee; and that the monies were never a gift.

ECF No. 477 at 2. Plaintiff relies on documentary and other circumstantial evidence that infers the money belongs to the Defendant. In response, the Claimant relies on his own affidavits, deposition testimony, and his son's affidavit. On their faces, the affidavits and deposition testimony create an issue of fact about the ownership of the funds in the Fidelity Account.

Plaintiff argues that the Claimant is relying on self-serving evidence that is not sufficient to defeat a motion for summary judgment. Plaintiff attacks Claimant's

affidavits as "shams" that Claimant signed without understanding their terms. Plaintiff argues that many of Claimant's factual assertions in the affidavits are implausible or facially incredible in light of other evidence.

As discussed above, an affidavit can create a genuine dispute of material fact precluding summary judgment so long as it is not conclusory and relies on personal knowledge or observation. Although not specifically stated this way, it appears Plaintiff essentially argues that the affidavits were not based on personal knowledge or observation because Claimant did not know what he was signing.

I need not resolve Plaintiff's challenge to Claimant's affidavits because, ignoring the affidavits and viewing only Claimant's deposition testimony and Defendant's Affidavit in the light most favorable to Claimant, there is a genuine issue of material fact as to who owns the funds in the Fidelity Account. Claimant testified under oath to the following facts:

- The money in the Fidelity Account (or at least some of it) was his money.

- He transferred the money to his son with the oral agreement that the son would manage the money for the father's benefit.

- On the parents' death, the residual funds would be used for the benefit of the family.

- The funds were not a gift.

- He does not understand English.

His testimony was unequivocal and was based on asserted personal knowledge.

21

Plaintiff argues that the objective facts belie Claimant's sworn statements. But, many of these facts are equally consistent with Claimant's testimony. Accepting (as I must at this stage) that an oral agreement to manage the money for Claimant's benefit exists, the absence of written documents is not surprising, nor is the fact that Claimant has not communicated with Fidelity, nor is the fact that Defendant tried to transfer funds to the Cook Islands without his father's knowledge. Plaintiff has not shown that the attempted transfer was not for the benefit of the father or otherwise in furtherance of the oral agreement. And, the Fidelity Account being solely in the Defendant's name is not dispositive of whether the garnished funds belong to Defendant; nor is the fact that the Defendant and the Claimant may have comingled funds in that account. *See Ginsberg v. Goldstein,* 404 So. 2d 1098 (Fla. Dist. Ct. App. 1981) (denying garnishment from checking account in debtor's sole name where debtor and spouse had comingled funds but evidence showed that disputed funds belonged to debtor's wife).

Plaintiff also points to the Claimant's letter to Bolton that says he is relinquishing all rights and interests to the account. Claimant testified that he did not understand the letter when he signed it.  Flores Dep. (ECF No. 462-1) at 11-12 (41:11-42:4, 42:22-43:9).  At this stage, therefore, I cannot give conclusive weight to this letter.

In its Statement of Material Facts, Plaintiff asserts that Defendant told Fidelity that his father had gifted him the money in the Fidelity Account. SOF ¶113. The record citation supporting this asserted fact is Plaintiff's Exhibit 20. *Id.* Exhibit

20 is an undated, unsigned, unsworn list of six questions and answers. It does not indicate who created the document or the source of the information contained in the document. Claimant disputes that his son told Fidelity that the money had been gifted to him. He cites paragraph 12 of Defendant's Affidavit, which says, "I do not recall ever telling a representative of Fidelity that the funds in the Fidelity Account were a gift to me by my father, because that would not have been accurate. I do not know why a representative of Fidelity may have created a note in their internal documents to that effect." ECF No. 478-1 ¶12 (cited in ECF No. 478 ¶113). Claimant also cites his own deposition testimony:

> Q:      Did your son ever tell you that he declared the money in the Fidelity account as a gift from you?
>
> A:      No, couldn't be.

Flores Dep. at 24 (92:7-9).

Plaintiff has not proffered competent evidence that Defendant made this statement to Fidelity. Exhibit 20 is unsworn, undated, unsigned, and lacks any showing of authenticity. "Unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279 Fed. Appx. 913, 915 (11th Cir. 2008). On the present record, it is inadmissible hearsay, which cannot be considered at the summary judgment phase. *Id.* at 914.[7]

---

[7] I recognize that "admissible evidence may be 'submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form.'" *McCaskill v. Ray*, 279 Fed. Appx. 913, 914 (11th Cir. 2008). But, Plaintiff has

Plaintiff makes forceful arguments that other evidence shows that Claimant's affidavits, Defendant's Affidavit, and Claimant's deposition testimony are not credible. Plaintiff may be right, but now is not the time for that argument. As the Eleventh Circuit noted in *Stein,* it is "an unremarkable proposition that a fact-finder can choose to disregard a litigant's self-serving (and unsupported) trial testimony. . . That proposition has no place at summary judgment." 881 F.3d at 858.

### III.    RECOMMENDATION

Based on the foregoing, it is RECOMMENDED:

1.   Plaintiff's Motion for Summary Judgment (ECF No. 461) be DENIED and this matter be set for trial.

2.   Plaintiff's Motion for Entry of Final Judgment (ECF No. 405) be DENIED WITHOUT PREJUDICE.

3.   Claimant's Motion to Dissolve the Writ of Garnishment (ECF No. 411) be DENIED WITHOUT PREJUDICE.

4.   Claimant's Motion to Strike Plaintiff's Reply Statement of Material Facts (ECF No. 484) and Claimant's Motion for Leave to File a Sur-reply (ECF No. 485) be DENIED AS MOOT.

5.   The facts listed in paragraphs 1-57 of this Report be treated as established in this case.  Fed. R. Civ. P. 56(g).

---

not shown that Exhibit 20 will be admissible at trial.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 7th day of December, 2022.

BRUCE E. REINHART
United States Magistrate Judge